The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have four interesting cases, good lawyers, and we look forward to being with you. And Madam Clerk, if you'll call the first case, we'll proceed. Yes. Case number 21-4413, United States of America v. Christopher Robert Sueiro. Mr. Gorbachev? Yes, Your Honor. May I pronounce your name? It's Gorbachev, Your Honor. You got it right. Thank you. Thank you and good morning. Most of the time I'm wrong. Well, it's an easy name to pronounce. There you go. Good to have you with us, sir. Thank you, Your Honor, and may it please the Court. This case involves the core protections of the Fourth Amendment as they apply to the search of a home in which my client, Mr. Sueiro, rented only one room. Without the warrant in this case, there would have been no evidence to prosecute Mr. Sueiro for the crimes at issue, let alone to convict him of these crimes. Now, other than the fact that this warrant was supported by a sworn affidavit, some kind of sworn affidavit, every other requirement of the Fourth Amendment... Every affidavit is a sworn affidavit, isn't it? That's true, Your Honor. In one of the cases in Williams, I think there was something like a representation from an officer claiming what he found without an oath. Here it was sworn, Your Honor, and that is the only thing about this warrant that was legal. Every other aspect of the Fourth Amendment was violated with respect to this warrant. And I just want to briefly hit a few important facts here. The investigation arose here when Mr. Sueiro's co-worker received two emails from a very specific... one specific email address. And the detective in this case, who both swore and executed the warrant, met with Ms. Olson and found out that the person who'd sent these emails was Mr. Sueiro. He also found out, as it later becomes important, that according to Ms. Olson, she's never... she does not believe... did not believe that Mr. Sueiro owned a cell phone. Now, detective lightly then goes to Mr. Sueiro's residence and speaks with an individual there by the name of Mr. Benson, who was both Mr. Sueiro's roommate and Mr. Sueiro's landlord. And he learned from Mr. Benson only a few facts. Number one, that Mr. Sueiro rents an upstairs bedroom of this single-family home. He rents the upstairs... one upstairs bedroom. Number two, that Mr. Sueiro in that bedroom has a He also learned that Mr. Sueiro has a ballistic vest and a firearm that he owns. Now, on the basis of those facts, detective lightly went and obtained a warrant that allowed him to obtain not only computers, any computers in the home, not only firearms, any firearms in the home, but also a slew of digital and storage hard drives, thumb drives, PDAs, and just every conceivable electronic digital media type of computer type device, including any cell phones in the house. He did not include in his warrant affidavit the fact that not only was there no evidence that Mr. Sueiro didn't own a cell phone, but the fact that the Mr. Sueiro very likely did not own a cell phone. There was nothing in this affidavit to suggest... Not everybody owns a cell phone anymore. I'm sorry, Your Honor? Not everybody has a cell phone anymore. That's generally true about at least... Generally true. At least at the time of Griffith, it was about 90% of people who own a cell phone. But the court in that case said just because it's common to own an item is not sufficient to go ahead and get a warrant with no evidence, especially for something as sensitive as a cell phone. Now, the problem in this case is that it's far worse than Griffith because... Why does the sensitivity matter? I mean, you know, we have this line of cases from the Supreme Court that talks about the ubiquitous role that cell phones play. And as Judge King indicates, I mean, most people have a cell phone. They're not all smartphones. Some folks have flip phones and the like. But most people, and it may be true that your client was the extraordinary exception, although it at least might have been thought that. But why does the sensitive nature matter? If the reasonable assumption is that almost everybody has a cell phone, and so searching for it because it can send emails and other things seems like a perfectly reasonable thing to do. Why does the sensitivity of it make any difference? You seem to want to focus on that. I'm curious why that matters. I don't think it's a major focus because you still have to have some evidence that somebody owns an item. You can't just receive evidence that they don't own an item and then ignore that, not tell the magistrate judge and go ahead and search for the item. But setting that aside... But you didn't ask for a Franks hearing, right? You didn't... This wasn't a Franks question, right? You didn't say that the district or the magistrate was misled, right? Well, it... And you agree that we can make reasonable assumptions about what people do. If 95% of people own a cell phone, it's not unreasonable to believe there's probable cause, right? Not certainty, but probable cause to believe that he owns one. Oh, well, Judge Richardson, a couple things. So, number one, in Griffith, which I understand is not binding on this court, but in Griffith, the DC circuit said that just because it's common, virtually everybody owns a cell phone, that in itself is not enough to assume that this specific person owns a cell phone. In fact, the court in Griffith... But we also know that this person is using electronic communications, right? So, we know he's not a troll under a bridge, right? You know, sort of a luddite who doesn't want to use technology, right? So, I mean, it seems like to me here, like we've got more than probable cause to believe that he was using electronic devices and given the prevalence of them, that he would be using a cell phone. Probable cause, not certainty, just probable cause. I think this case is very unique in that regard, Your Honor, because again, we cannot overlook the fact that the detective in this case, the only information he had was that Mr. Suero did not own a cell phone. Well, that I don't believe he owned a cell phone, right? Mr. Benson says, I don't believe he owned a cell phone. It was Ms. Olson, right? But the fact is that the detective then took no further steps to then ask, for example, Mr. Benson, well, I hear he doesn't own a cell phone. Is this accurate? A police officer can't just receive information that somebody does not own something, likely doesn't own something, ignore that, not include it in the affidavit, and then go ahead and use his own judgment to say, I feel like my investigation, you know, I don't like the results of what it says. I'm going to go ahead and ask for a cell phone. Okay, Mr. Gorfkoff, though, I think your time is moving pretty quickly here. We need to hear from you on why the good faith exception under Leon doesn't apply in this case. Yes, Your Honor. Because I haven't heard anything to suggest that the officer recklessly disregarded the truth, that the magistrate wholly abandoned his judicial role, or that the warrant was so facially deficient that the executing officer could not reasonably presume that it was valid. So what do we have in this case, based on the record, that would fit you within one of those Leon exceptions? Yes, Your Honor. There are multiple grounds for that, and I'll start by just noting that the Leon exception is the reasonable officer, objectively reasonable, well-trained officer. That's the standard under the Supreme Court. And so we begin with the fact, and going back to Judge Richardson's question, that a reasonably well-trained officer cannot ignore or omit information from his warrant that suggests the defendant doesn't own the item that he wants to seek. He has to do something more. Right. But the Leon language in our cases that have applied Leon suggests that some intentionality is required. There has to be some evidence that the officer willfully did something or recklessly disregarded something. What was recklessly disregarded in this case? Well, I think the facts easily show recklessness, Your Honor, because he went out, he asked, he specifically asked somebody, does he own a cell phone? They said, I don't believe he does own a cell phone. Took no further steps to find out whether he owns a cell phone. Then, in his affidavit, omitted the fact that he had information that Mr. Swerow likely does not own a cell phone, and then went ahead and proceeded not only to seize Mr. Swerow's cell phone, but to get authorization to seize any conceivable cell phone in the house, regardless of whom it belonged to. If that is not recklessness and that is not objectively unreasonable, Your Honor, I don't know what is. But moving on, a reasonable officer cannot seek a warrant that is much broader in scope than the probable cause he has. Officer likely knew that Mr. Swerow occupied only one room of this residence. He had no information, and certainly nothing he put in the warrant, that would suggest he could search the entire residence, that Mr. Swerow kept his items throughout the house. He had no information like that. He had no information the other way, right? So he rented an upstairs bedroom, but was there information that he had no access to the remainder of the house? There was no such information, Your Honor, but the relevant question... I mean, you know, typically, you know, I'm not a big boarder, right? But it seems sort of the natural inclination is that if you rent a bedroom and a house, that you continue to have access to the kitchen and the remainder of the house. Maybe there are places where you do not, right? But you generally have access to something beyond the bedroom. In fact, you've got to walk through other places to get there. That would be a fair assumption, Your Honor, if Detective Lightly... if it was something that, in fact, he had and he put into the affidavit, but also the fact that other people... But we say, like, you don't have to put common sense, like, beliefs and understandings in, right? You don't have to say... you don't have to, like, dot every I and cross every T in an affidavit, right? Like, he doesn't need to say, in order to get to his bedroom, he has to walk through the den. Like, that's just sort of an understood part of what we're doing, no? Right. But... He has to legally get access with the approval of the magistrate, correct? That's correct. And he did, because he got a warrant from a state court magistrate, right? Right. Well, the question is if the we submit that it's... You want to suppress it? Grossly overbroad, yes. He went to trial on child pornography charges. Yes, Your Honor. In federal court. He got convicted. And you don't raise any legal issues about the trial or that portion of the record, right? Solely the sentencing, Your Honor. But... As to the trial, you don't make any the complaints of error. No, no. We would, other than that, we wouldn't have had a trial if if this warrant were... Right. If you knock out this evidence, there wouldn't be anything to try. That's right, Your Honor. And going back, Your Honor... But you do say that the sentencing was a little bit out of whack. Yes, yes. The district court did... Well, we got here. I mean, I'm... Moving along here gets you focused. And the government may be... We're going to hear from here in a minute. They may be ready to acknowledge some problem with the sentencing for you. They may, although I doubt it. But they... The chief problem with the sentencing, Your Honor... Would you like to hear about our issue with the sentencing, Your Honor? Well, I'm just... That's up to you, whatever you want to do. Thank you, Your Honor. I would just briefly... I do think that the suppression issue is so central to the case that I did want to continue to finish... You knock the whole thing out if you get us to agree with you on suppression. Yes, Your Honor. That's exactly right. And that's why I think good faith is an important question. And to go back to Judge Richardson's point, I think in Maryland v. Garrison, the Supreme Court said that if officers knew that multiple individuals occupied the floor of a building that they were going to search, that that warrant would not have been valid for them to search the entire apartment. The only reason it was valid was because they did not know that there were two people that lived up there. Can I ask you about a Supreme Court case called Ross? And then Ross stands for this proposition. And if I can go over just a minute, it stands for this proposition that you can only look in locations where the nature of the object might be found. Right. And so if you're looking for, you know, a six foot tall sculpture, like you can't look in a bedside drawer. Right. And so this is the idea that the nature of the object determines the places that you can look. And the warrant and affidavit here, you know, directs to look for instrumentalities and evidence of threats, these particular threats from your client. And so why wouldn't we understand that the warrant like in Ross is properly limited to locations where evidence related to that might be found? And so if a if an officer, for example, went into Mr. Benson's bedroom, it'd be like looking in the bedside drawer for a statue. Right. That is not reasonable for an officer to believe that he's going to find evidence of your client's threats in the bedroom of somebody else any more than it might be reasonable for him to look perhaps in the freezer for such evidence. Yes, your honor. If I may, I'm over time. But if I may, I think you get questions. You go ahead and answer. Thank you. I appreciate that. I think the answer, your honor, is in attachment C, which is the list that controls. First of all, there is no such narrowing that it's associated with the crimes. The only two I assume for a focus on my question, assume I think paragraph three of the affidavit does that. And so just assume that I think it is so limited. OK, then we move to the next point, which is what is this? What the particular the Supreme Court has said that the particularity requirement is geared towards the executing officers, the officers who are executing the search. Now, that doesn't matter in this fact, in this case, that it was detective lightly. That doesn't magically save the warrant because we still have to look at the four corners of the warrant and the affidavit. And what the Supreme Court has said is that if the reasonable if the particularity required, if the particularity of the warrant is such that an officer executing it, looking at the warrant goes in the house, I mean, a cell phone could be in anybody's bedroom. But but you understand my my my concern is the warrant that's looking for the six foot tall statute doesn't have to specify that the bedroom drawer is excluded because of an officer looking at the face of the warrant says, you know, statute not in bedroom drawer. Right. And similarly, you know, reading this affidavit, you understand who the person is that's making the threats. You understand there's another person there named Mr. Benson who's not making threats, who's cooperating. And so a reasonable officer walking in says, that's Mr. Benson's bedroom. It is not likely that I'm going to find the statue in that bedroom drawer. The problem, Your Honor, is that there's nothing in the affidavit or in the warrant that says which bedroom is Mr. Benson's, which bedroom is Mr. Swearer's or which bedrooms are the four other roommates who live there. There's nothing in the warrant that would allow an officer executing this warrant to say it's the upstairs bedroom on the right. And so so absent your view is absent law enforcement's ability to have like the floor plan of the house. They they can't search it at all. My my view, Your Honor, is that is exactly in line with Brough, which is that if an executing officer looking at this warrant had no idea where to look in the house, then that's then that's an overbroad warrant. Thank you, Judge. Thank you, Your Honor. Thank you. You have some rebuttal time. Mr. Cook, you out there? Yes, Your Honor. Thank you. May it please the court. I'll start with the Fourth Amendment issue. The defendant's principal argument, as I understand it here today, is that the warrant is invalid and lacked probable cause because or lack of particularity because of the inclusion of a ability to seize the cell phone. What the officers knew in this case was that the defendant had sent threats via email and it is perfectly reasonable for a warrant to request and a magistrate judge to approve a search for a cell phone that could be the source of where a defendant sent email because it's common knowledge that you can send email using the phone. As it happens, none of the evidence in this case comes from a cell phone. It comes from the devices that the police seized and the execution of the warrant. So I think that the cell phone issue is rather attenuated as a basis for suppression, which has not been the focus, I think, of the briefing on appeal. Mr. Cook? Yes. If the officer here executing the search warrant, was he limited to looking for items believed to be evidence and instrumentalities of threats? Yes. I mean, the warrant has to be read through a combination of aspects of the warrant. The first would be that the warrant identifies the particular crime that they are investigating and the crime that they are investigating is death threats and that's in paragraph 1 and it gives you the code sections. This court said in Cobb and in a bunch of cases that identifying the crime that you are investigating helps address the particularity requirements. So that's number one. Number two is that the place to be searched is described as the residence of Mr. Christopher Asuero and that, I suppose, could be viewed as ambiguous and encompassing the residence of anyone in that building. But I think the fair reading of it is that it's referring to the defendant's residence. That's what it says. And really, overbreadth analysis here is not about excising words. It's taking a phrase and saying this is susceptible to two readings. One is that you can search the defendant's residence and the other is that anyone who lives in that building. And I think that it is a reasonable application of the overbreadth doctrine to say, well, we're going to construe this to mean the defendant's residence. That would encompass places, common areas that he has access to as well as his bedroom. I don't think that the police have to be limited in that respect. But we're talking about warrants that the case law said are drafted in haste by people that are not lawyers. And I think it's reasonable to construe the phrase here, the defendant's residence, as encompassing the places where he has access to and could have the evidence. And then the third thing is the warrant refers to the various places where evidence of this email death threat might be found. And it identifies, of course, the defendant as the person that is suspected of sending the death threats. And so, naturally, a search would be of electronic devices the defendant could have been using. And so, I think that adequately constrains the scope of the search. So, Mr. Cook, do you agree? I mean, if they had gone and searched Mr. Benson's bedroom, which I have no reason to think they did, but had they done that, would that have exceeded the authorization of the warrant? I think it would have. And the detective testified, and this is Joint Appendix, page 209, that he did not search other bedrooms. But I do think that it would have been... Now, this would be a question about the reasonableness of the execution of the warrant. And if the officers had reason to think that a particular room included was one the defendant had access to, I don't think that would be unreasonable. But if the evidence before them was, this is a room that belongs to somebody else, the defendant doesn't have access, then I think that would exceed the scope of the warrant read as a whole about where they could search. Would this fellow complain about it, or would it have to be the other resident complaining about it? Well, I mean, I don't think the defendant would have standing to complain about a search of... It wouldn't be his issue to raise. Right. That's right. I agree with that. He would not have standing to complain about search of Mr. Benson's bedroom. But that didn't happen factually, and I don't think the warrant fairly read would have authorized the search of a bedroom known to be Benson's and not the defendant's. I don't want to get you sidetracked, but I'm interested in your views, particularly in light of your recent letter with respect to the sentencing issues, unless you have more on the Fourth Amendment issue. No, I'm happy to turn to the supervised release condition. And Your Honor has suggested, or the panel suggested that the government might be willing to give some ground on the conditions of supervised release, and I'd like to elaborate on that. As I indicated in the letter, really the point on which we're willing to give a bit of ground would be solely the condition that addresses the defendant's... This is Condition 6. The defendant shall not engage in employment or volunteer services allowing access to a computer. And I think when you read that condition with the other conditions in this case, I don't think that the district judge's intent with that condition was to say, you know, you're working in a manufacturing facility and there are robotic devices that use computers. You can't work there. That would be, I think, in no one's interest. We don't have an interest. No one has an interest in having the defendant be unemployable, and I don't think that's what the district judge set out to do. So I think it would be okay to have the district judge clarify that condition. I don't think a total resentencing is necessary. I don't think this is a device to revisit the total was narrowed to communications essentially to reach children, use the console to communicate with children, or access websites and download information. The point should be that the work computers shouldn't be a way to evade the internet monitoring that the defendant doesn't even challenge. I mean, the defendant doesn't challenge condition 11 that requires computer monitoring programs of his computers. I would think that most employers are not going to be happy with the probation office having monitoring programs on their computers. So if you're talking about a workplace environment where in order to ensure that the defendant isn't getting on the dark web on the workplace computers, you need to have computer monitoring devices. I think that would be a reasonable restriction to say the defendant can't have access to that kind of computer. Mr. Cook, with regard to the adult pornography condition of supervised release, do you have a problem with that restriction in light of our recent decision in ARCE, our March 8, 2022 decision, where the court upheld the restriction based on evidence in the record that the defendant had an addiction to pornography and that this created a serious problem that while a general ban on adult pornography might have not been appropriate, in that case, the evidence indicated that it was appropriate. Do we have any of that kind of evidence in this case regarding an addiction by Mr. Swerow to adult pornography that would bring him within the language of ARCE? Right. So I would address that in two parts. Part one is the district court's explanation, and part two would be whether the evidence would support such a restriction. And let me start with just does the evidence support the restriction. And this is a somewhat unusual case. And what makes this unusual with regard to this and this is in a sentencing position, Joint Appendix 1206, and at the sentencing hearing 15, Joint Appendix page 1519, where he affirmatively was asking for inpatient mental health treatment and sex offender treatment. So that starts you off in a fairly different scenario. And the reason why the defendant was doing that is that he was seeking to make use of and succeeded in saying, the defendant has some serious mental health problems. You should give him a lighter sentence and that you should supervise him on supervised release as a substitute for incarceration. And the district judge said during the sentencing hearing, and again, this is page 1519 of the Joint Appendix, he said, Mr. Swerow has had 28 years of opportunities to show that he's willing to help himself. And he has just frankly failed to do it at every single turn. Every doctor that we've read these reports about have said the same thing, that he's got to be willing to help himself and he's just unwilling to do that. And defense counsel responded, yes, but what's different here is that you can have the coercive power of the conditions of supervised release. Okay, so that's the first step. The next step is we have this defendant's got a huge collection of child porn. What does Mr. Cook, if you'd focus, please, on what this has to do with adult pornography. It seems to me that you want us to just jump over because he's got a problem with child pornography to say that all access to adult pornography is likewise appropriate to be without evidence that he has an addiction of some sort. I don't think so. When you're talking about a defendant who is saying I need sex offender treatment, I don't think that it's, you know, an abuse of discretion for or here under plain error for a court to say that's going to encompass, you know, both adult and child with any kind of limitations. I mean, this is a defendant who plainly has a problem with self-regulation. I mean, the death threats alone show you that regardless. Was there any evidence in this case that he had access to adult pornography? I mean, there was access to the dark web. Was there evidence that he was frequently using adult pornography in conjunction with child that he was conflating the two? Is there anything in this record? Candidly, I could not tell you whether in the evidence in this case there was adult pornography or not. But I think that where you have, again, a defendant saying I need sex offender treatment and a judge says that's going to encompass limiting your access to pornography generally and more specifically child pornography, that's a reasonable inference. Okay. Could you move on to video games then? That seems awfully broad to me. And, you know, I understand the good intentions of the court. It's just when they bump up against First Amendment considerations about the right to access and, you know, to read these materials. So why is the video game condition of special release not overly broad? It's not for a couple of reasons. One is the defendant has the ability, if he wants to, to play video games because the computer monitoring restriction in Condition 11 allows him to have computers that just have to be monitored. And the gaming console restriction isn't a restriction on all gaming consoles. It is a restriction on one that, quote, enables him to contact and or share data with other individuals. And so he can't play games with other people? Is that what you're saying? Exactly. And the point for that is because such a console wouldn't have the computer monitoring that's set forth in Condition 11, but would enable a defendant to reach out to other children and communicate with them, or just generally access the Internet and download child porn that way undetected. But the district court's condition isn't limited to playing games with children, is it? It's also adults. Yeah, other individuals. But that's because that's a mechanism to be able to, again, evade the computer monitoring in Condition 11. I mean, I think that if you have a gaming console that is capable of having computer monitoring software on it, you can say that that just fits within Condition 11, which allows them to have computers. I mean, I don't think there's anything special about the fact that a particular device is aimed at gaming. It's really the monitoring. So reading together Condition 11, which is, yes, you can have computers. We're not banning you from having personal computers that would even have access to the Internet. It's just that there has to be computer monitoring that ensures that you, a defendant who's been willing to use the dark web, which is exceedingly difficult to monitor, can't have devices that are bereft of a monitoring device. And so I think read together, those are perfectly reasonable limitations. And particularly in the context, again, this is plain error. The defendant did not object to these in any respect. And so he would have to show. Keith pointed to a passage in this court's opinion in Ellis that is not deciding this question and did not was concerned with a dramatically broader restriction on any kind of computer games, which is not what we have here at all. Can you tell me a little bit, Mr. Cook, just so that I understand conceptually? And I know we've done it a couple of times, but I'm just looking for some advice for you in cases where hypothetically, let's assume that one or more of the supervised condition release conditions either needed clarifying or being or needed to be removed. Can we how can we do that? Do we have to send the entire sentencing back as a package or can we just send it back for the limited remand to address, you know, let's say, you know, condition six and condition, you know, the adult pornography condition, for example. Can we limit remand in that way on a sentencing? Is that an appropriate thing for us to do? I think you can. I guess the first thing I should say, I don't believe this court's precedent is highly developed on that. Other circuits have probably done more in the way of limited remands. Generally, this court is ordering a de novo resentencing where you're looking at a case in a sentencing package type, you know, framework. It would make sense to have the whole sentence sent back. And in this case, you know, I think that if what was imperiled was a condition that was really central to what the balance struck by the district judge, like, let's suppose, you know, no computer monitoring is permitted. He just has to have wide open access and no, you know, sex offender treatment. Then the district judge might want to revisit the length of the sentence, frankly, if supervised release was going to be that toothless. What we're talking about here, I think, reasonably, I mean, perhaps I'm misconstruing the district court's intent, but I just don't see, for example, the condition on the work access to a computer. So I understand that framework. When you say our case law is not very developed here, help me understand, you know, you know this case law as well as anybody. Have we required a full remand or have we just not addressed this issue? I mean, I understand the sort of playoff. And it seems like in a number of cases, we have sent it back for a figure out what does that playing field look like today in the Fourth Circuit, understanding that other circuits have been a little more nuanced about it. Right. Well, I don't I wouldn't say that this court has been unnuanced. I just think it hasn't spoken to it a whole lot. And I mean, the court can certainly let me know I'm wrong about this. But I understood the ARCA remand not necessarily to require a full de novo resentencing, but just a clarification of the conditions there. More than a ministerial correction of a judgment, but not a need to revisit everything that had already been done. And I guess it's of a piece with, you know, the scope of the mandate and sentencing. You can send a sentence back for resentencing where you say everything start from scratch. And in other cases, it could be just revisit this guideline and then, you know, apply the 3553A factors. And that just depends on how the court chooses to write its instructions for the remand. It'd be reserved our discretion, would it not? It'd be. Yes. The panel in the case. Exactly. And I think that discretion would be informed by a judgment about the centrality of the condition to the judge's overall sentencing determination. And if you're talking about something that appears to be relatively peripheral to the overall sentencing termination on a condition of supervised release, it would be a totally appropriate to send it back for clarification of that one condition without a need to revisit everything. And essentially, what would be going on here is a combination of a fairness determination along with a judicial economy type determination that if in the panel's view, the problem is really a very narrow one in the sentencing that does not plow all the ground of the de novo resentencing. It's just not needed. And it's not the error doesn't reach that. It doesn't require revisiting all those issues. But if in the panel's judgment, no, actually, this really could be relatively central to the, you know, overall sentencing determination, just start over and do it again. And that's just up to the court. Thank you very much, Mr. Cook. Thank you. Appreciate it. Mr. Gorakoff, we've got some time reserved. Yes, Your Honor. Thank you. Do you mind starting with the what we just finished with? Whether you, understanding we probably have discretion to do it one way or the other, whether you think there's a reason why, if hypothetically, we agreed with you, but only with respect to several of the supervised release conditions, whether that would require a full resentencing, which might result in a higher sentence or a lower sentence for your client, or whether we could limit it, we should limit it to the particular issues that we find? My position would be, Your Honor, that the sentencing package as a whole matters. So if the judge is going to be tinkering with one aspect, he should have the discretion to adjust other aspects of it. Understanding that if you're lightening the burden on the supervised release condition, the only sort of like likely outcome there would be a longer sentence because of the inability to control? I'll confess, Your Honor, that since it's a de novo resentencing, I would try to do a better job of trying to show this district court that my client, a mentally ill man who's got non-contact offenses, solely child pornography offenses, got sentenced to three or four times more than the average offender who does the same thing, and more than sometimes violent, sometimes non-violent, hands-on, contact sexual offenders. I would like an opportunity to make that case de novo, Your Honor. So I'll be honest about my motives here. No, no, I appreciate your honesty. Your Honor, going back to some things that Mr. He said that no cell phone was seized. I just want to point out that that fact has absolutely no bearing and no relevance under the relevant analysis. None at all. The analysis is the facial validity of the warrant. Secondly, he stated that the cell phone was the focus of our appeal, and I would respectfully say while it's a very egregious issue, it's not by far the only issue. As I mentioned, Your Honors, there's a slew of items here that were seized in this case, and overbreadth also is not the only issue, because there's also a violation of the requirement that there must be a nexus shown, at least by some showing. Conclusory statements aren't enough. Here there were zero statements, no statements at all, as to how Mr. Suero's offenses relate to the slew of things here on this attachment C, other than computers, and arguably a firearm and a vest. We'll concede those for the purposes of this argument. But there was no nexus, nothing, not even an attempt to show how there was a basis to seize all of these other things on this list. And finally, there was no attempt to show that these items would be found at the residence, because again, there was no evidence that they existed at all. These are three separate independent requirements. So even if we set aside overbreadth, the nexus to the offense is not a formality. It's in the Fourth Amendment. The Supreme Court has said it again and again and again. The fact that there has to be a showing of probable cause that these items will be found in the residence has to be shown, cell phone being the most egregious example. But there's, again, not even a conclusory statement. Mr. Cook mentioned that there are two readings of the, two possible readings of the affidavit and the warrant in this case, and that is the very problem with it. That is exactly the problem with it, because under Supreme Court law, anything that, when this kind of warrant leaves something to the discretion of the officer, especially something as vital as how to read the warrant itself, it cannot be valid. That goes against the very purpose of the Fourth Amendment, which is to limit the discretion of the officer in is not sufficient, because in Maryland v. Garrison, it identified the target of the search, McWeb, it identified his crime, marijuana, yet the Supreme Court still said that if the officers knew multiple people occupied the third floor, the search warrant wouldn't have been valid. The search warrant would have been overbroad. And that is exactly the knowledge that Detective Lightly had in this case. The Fourth Amendment requires that the places to be searched be specified with particularity. If you only have information that someone occupies a room, specifying an entire house without limitation is just flatly contradictory to the text of the Fourth Amendment. And again, here there was nothing to identify the room, nothing to give officers guidance as to where to go and what to do. And the fact that they decided to rely on Mr. Benson to take them upstairs and show them where the room was is exactly the kind of discretion that's prohibited by the Fourth Amendment. That was a discretionary decision made by the officer as to how he was going to conduct the search. Finally, there was an issue about standing. And I think the law is fairly clear that as to, you know, if these individuals had their room searched, they might have had a 1983 claim, no doubt about that. Mr. Suero wouldn't have had a because it exceeds his room. And certainly he does, because again, the question comes down to the facial validity of the warrant. Going back briefly, Your Honor, to the issue of good faith. I just wanted to point out that, yes, Judge Richardson asked me, did we raise a Franks issue? And the question and the honest answer to that is, no, we never used the word Franks in relation to this fact that Detective Lightley omitted, a critical fact that had the magistrate known, there would have been no probable cause. So we never used the word Franks, but we repeatedly handled it. The fact that you're talking about is that the woman being threatened said that she didn't believe that he had a cell phone. Right. The co-worker that saw him daily and based on her that he actually has a cell phone. And the ubiquity of the cell phones again becomes relevant here, because as we know, you know, people are walking around with their face stuck in the cell phone all the time. So the fact that this co-worker of Mr. Suero, who interacted with him on a daily basis, actually told Detective Lightley, no, you know what? I really don't think he does have a cell phone. That's a that's a biggie. That's a that's a big point that for to the magistrate. It doesn't just flunk Franks. It just flunks the that a reasonable officer should have known that there's no probable cause for the seizure of the phone that he sought to see. So independent of the fact that it was a reckless misstatement or reckless omission under the other branch of good faith, Leon, good faith, just a reasonable officer should not Thank you, Your Honors. Thank you, Mr. Gorachoff. And I particularly want to thank you for handling this appeal. You're court appointed. Yes, I understand. And we appreciate the work you do and your contemporaries that handle these cases. And we really do appreciate it. We couldn't do our work without yours. That will take this case under advisement and Madam Clerk, Madam Clerk, will reorganize the council tables and go to the next case.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan